MRS. EULA BENNETT, Defendant in Error, v. WAL-
TER BENNETT, Plaintiff in Error.—292 S. W. (2d)
202.

Western Section, at Jackson. June 15, 1954.

Rehearing denied by Court of Appeals, August 23, 1954.

Petition for Certiorari denied by Supreme Court November 16, 1954.

H. T. Etheridge, Jr., Jackson, for plaintiff in error.

Murray & Murray, Billy Jack Goodrich, Jackson, for defendant in error.

AVERY, J.  The foregoing styled cause originated in the Chancery Court of Madison County, Tennessee, Honorable Dewitt Henderson, Chancellor, by suit of complainant Eula Bennett for divorce, against her husband, defendant Walter Bennett.

The grounds for divorce alleged in the petition are:

"Wherefore complainant alleges that the defendant has deserted and abandoned her, turned her out of doors and refused and neglected to provide for her.  That she * * * gave him no cause for his mistreatment of her."

The original bill is short but it goes into an explanation of the facts constituting the alleged abandonment. The bill was filed November 8, 1952. Process was issued and served on defendant by personal acceptation of the service, in the following words:

"I hereby accept service of this subpoena and have received a copy of bill dated November 8, 1952.

(Signed) W. A. Bennett"

In the original bill complainant averred that she had filed a bill for absolute divorce in the same court on March 1, 1951, was granted a divorce from bed and board for a period of one year, and upon her petition to have same made final on the 7th day of April, 1952 the application was dismissed, the defendant having alleged that he and complainant had been living together as husband and wife since the temporary divorce of April, 1951, and that since the 17th day of April, 1952 she had not seen defendant nor had he attempted reconciliation, nor contributed anything to her support.

Defendant answered the original bill on November 21, 1952 and in that answer he admitted the marriage, as alleged, and that the prior divorce proceedings had been disposed of as set out in complainant's bill.

Nothing in the bill or answer sets further the grounds for divorce as alleged in the original bill, but the defendand denies the averments of abandonment and non-support and asserts that since disposition of the complainant's application for permanent divorce under the original bill he had made all necessary effort to persuade her to return to him and live with him.

The case was heard before the Chancellor on oral testimony, and in the outset counsel for complainant called the court's attention to the fact that on Thursday morning (presumably meaning on a Thursday morning following the third Monday in November 1952), which evidently must have been November 21, 1952, the complainant with a witness had appeared in the Chancery Court before the Chancellor, the proof by her and the witness heard orally by the Chancellor, at which time the Chancellor had announced that divorce was granted, but before entry of the decree counsel for Mr. Bennett, who had not answered the original bill before that hearing, advised counsel for plaintiff that he was going to file an answer, and upon that information counsel for complainant did not insist on the entry of the decree and that later on that same day an answer was filed, the decree held up and thereafter the case was not heard until, as shown by this record, the 5th day of May, 1953.

The record reveals that counsel for complainant had drafted a proposed decree, made copies thereof, and before going over to the Court that morning (November 21, 1952), handed complainant a copy of that decree. That after she left the Court that morning, she was not advised that the decree didn't go down, because of the aforesaid agreement. Counsel for complainant forgot to notify complainant of that fact, and that complainant went to Texas that day, thinking she had a divorce, where she married on Thanksgiving seven days after that hearing, after which she was later advised that she had no divorce, all of which resulted in this hearing on her original bill, and the answer. At the hearing both parties testified, and for complainant there was the testimony of a Mrs. Chess Maclin. The defendant appeared as the only wit-

ness for himself. Each of the parties to the suit resumed the witness stand three or four times in the course of the hearing.

At the conclusion of the hearing the Chancellor granted complainant an absolute divorce. The defendant excepted to the action of the Chancellor and perfected his appeal, on the pauper's oath, to this Court, and has assigned two errors as follows:

"1. It was error for the trial judge to rule that the plaintiff had made out a case of abandonment and non-support. This was error because the evidence showed beyond doubt that she refused to live with him and that he had a place for a home and she refused to go to it. The plaintiff admitted that she refused to live with him and at no time in her testimony did she say he left her. She refused to live with him.

"2. It was error for the trial judge to rule that the court could consider what happened before their last separation. Tr. p. 22. This was error because you can not consider prior incidents in a suit for divorce where the grounds are for abandonment and non-support. This ruling would be correct if the grounds were for cruel and inhuman treatment."

It should be stated here that the parties have two children, both grown, one married living in Anchorage, Alaska, and the other in training in the Methodist Hospital in Memphis, neither of whom testified.

The plaintiff cites no legal authority to sustain either assignment of error, relying solely upon the facts testified to by the witnesses, and particularly by the testimony

of the defendant. The plaintiff states as a fact that she did not live with the defendant after their separation and divorce from bed and board, and most positively states that she never expects to live with him. She details her reasons why. Some of the acts relate to occurrences prior to their first separation and are detestable in their very nature. She testifies that she worked for a long number of years and that it was necessary for her to work in order to keep the children decently clothed and in school when they were little, and in addition to her testimony that defendant failed to support her, she details several incidents of cruelty and personal indignities.

On the other hand the defendant insinuates that she had been unfaithful to her marriage vows, but that he wants her to come back to him and live with him, and offers to support her if she would do so. He testifies about his efforts to get her to return, and that after the separation they sold a little home they owned and divided the net proceeds.

██ With the record as filed the Court cannot be put in error because he permitted the complainant to testify about incidents prior to their first divorce proceedings. Only a temporary divorce was granted for a period of one year and thereafter some decree was evidently entered, which the record does not reveal, by which she was denied a permanent divorce. So it has been a sort of an apparent continued separation, growing out of an abandonment alleged in the instant bill, and continuing over a long period of years.

██ As to the first assignment of error the Chancellor saw the witnesses, heard them testify and had every opportunity to weigh their testimony in the light of their

demeanor as witnesses, and upon that proof found that complainant had carried the burden of proving the facts as alleged in her bill.

■ It must be remembered the grounds for divorce is that the husband has abandoned his wife or turned her out of doors and refused and neglected to provide for her. This is Subsection ''(3)'' of Section 8427 of the Code of Tennessee 1932. It must also be borne in mind that this Subsection is one of the discretionary grounds for divorce a mensa et thoro or from the bonds of matrimony. That discretion, in the first instance, is vested in the trial court.

This Court will not interfere with the exercise of that discretion by the trial court unless it was abused. In the case of Plantt v. Plantt, 28 Tenn. App. 79, 80, 186 S. W. (2d) 338, 342, discussing the discretion of the trial court under Subsection ''(1)'' of the aforesaid section of the Code this Court has said:

"This statute expressly confers upon the trial court the discretion of granting or refusing a divorce from the bonds of matrimony when cruel and inhuman treatment has been alleged and proved. [The court of appeals] will not interfere with the exercise of that discretion by the trial court unless it was abused."

It has been said, in many cases which need not be referred to in this opinion, that the Trial Court is a better judge of the integrity of the witnesses appearing before him than this Court can possibly be upon an examination of the record. The Chancellor evidently believed what the complainant said about the facts of the case, as corroborated by her witness and concluded that her testimony, so supported, was true.

The parties are adults and defendant's testimony that he would accept complainant back into his home and provide for her is not consistent with many of the other statements he makes from the witness stand. Many accusations are made against him by complainant, in her oral testimony, from which the trial court evidently reached the conclusion that he was not worthy of belief.

In the plight of the record the assignments of error must be overruled, the decree of the Chancellor affirmed and the cost taxed against defendant, the appellant in this Court. Decree will be entered accordingly.

Carney and Bejach, JJ., concur.

Avery, P. J.

On the 15th day of June, 1954 this Court filed its original opinion in the above styled cause sustaining the lower court in its decree granting complainant a divorce on the grounds of abandonment, and very clearly set that out in its opinion.

On June 25, 1954 petition to rehear was filed in which counsel for defendant, appellant in this Court, states that "Counsel is herewith mainly basing his petition for rehearing upon a single ground." According to the petition it seems that that single ground is that because the defendant stated that he tried to talk to the complainant and invited her back home, and that she admitted she would not talk to him, and further stating that when she left she meant that she was through and not going to continue to live with him, was overlooked in the opinion of the Court.

The opinion of the Court deals with the entire case, and all the proof in it, together with a proper reference to the decree of the Court below, directing the

attention of the parties to the fact that when the case is heard on oral testimony without a jury, there is a presumption that the decree of the Chancellor is correct, unless this Court finds the evidence to preponderate against the decree. Sec. 10622, Code of Tenn. 1932.

This Section of the Code has been referred to many times, and in many cases, and in many different phraseological statements. Perhaps the plainest of which is that: On the trial in the appellate court of a Chancery case tried on oral evidence there is a presumption of the correctness of the decree unless the evidence preponderates against it. Jackson v. Jackson, 25 Tenn. App. 198, 154 S. W. (2d) 797; Perry v. Carter, 188 Tenn. 409, 219 S. W. (2d) 905.

Perhaps twenty cases between the dates of these two decisions could be cited, and several since the Perry v. Carter case, to the same effect.

This Court knows of no reason why that when the Chancellor found that there had been abandonment of the complainant by the defendant, sufficient to justify a divorce, the fact that she refused to talk to defendant when he called her, or to return home even when he invited her, forms a basis for determining that there had not been an abandonment. The record clearly shows that the complainant had been working for some fifteen or twenty years, as referred to in the original opinion, to make a living for herself and the children, and as said in the original opinion, the Chancellor found that there had been an abandonment and we did not find the evidence to preponderate against his decree and do not at this time. Therefore, the petition to rehear is denied.

Carney and Bejach, JJ., concur.